**GEE CHEE ON, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States of America, Appellee.**

**No. 16642.**

United States Court of Appeals Fifth Circuit.

April 1, 1958.

Rehearing Denied May 22, 1958.

Sam R. Merrill, William H. Scott, Jr., Houston, Tex., for appellant.

Malcolm R. Wilkey, U. S. Atty., Sidney Farr, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

This action for a declaratory judgment of citizenship was instituted under Section 503 of the Nationality Act of 1940.[1] It was first filed in the District Court for the District of Columbia on December 15, 1950. The issue was limited by

---

1. 54 Stat. 1171, then appearing as 8 U.S.C.A. § 903, the subject now being covered by 8 U.S.C.A. § 1503.

pretrial proceedings to a question of the relationship between appellant and Gee Sing Suey. On February 8, 1954 it was transferred to the Southern District of Texas.

The questions involved are argued by the parties under three points: (1) whether the question of the legitimacy of appellant's birth was before the district court and, if it was, was it erroneous for the court to find that the plaintiff had failed to prove that he was the legitimate son of Gee Sing Suey, who is stipulated to be a citizen of the United States; (2) whether the trial court was in error in finding that appellant had failed to prove by a preponderance of the credible evidence that he was the natural son of Gee Sing Suey; and (3) whether the trial court arbitrarily rejected evidence which was uncontradicted and unimpeached in making its finding that, taking into consideration all the evidence and the court's observation of the demeanor of the witnesses while testifying, the evidence that appellant was the son of Gee Sing Suey was unworthy of belief.

The Government presented no evidence; its case consisted of the cross-examination of appellant's witnesses. At the close of appellant's case and after argument, the court made the following statement:

"THE COURT: It is my opinion that the plaintiff's case is inconclusive. Serious doubts have been raised about the credibility of the plaintiff's testimony. We cannot give the highest credibility to the testimony of one who will swear to what he believes to be the best story at the time. There has been too much patching up of discrepancies in the plaintiff's testimony.

"Plaintiff in this court admitted he lied in several particulars in his previous testimony before the Board hearings in California. Ordinarily there is no inclination or compulsion to lie if the party has a straight and true case to present. In a case of this sort we expect and must require the utmost of good faith. It is my opinion plaintiff has not met his burden to prove his case by a preponderance of the evidence. Plaintiff's suit will be dismissed with costs adjudged against him.

"I will ask that counsel prepare and submit appropriate dismissal orders. I plan to leave on vacation as early next week as I can get away, probably the middle of the week, and will, therefore, ask that it be prepared and submitted by the end of this week.

"MR. FARR: All right, sir, I will do that.

"THE COURT: I do not believe we need findings of fact and conclusions of law. I don't believe it is necessary in this case in view of the announced ruling of the Court.

"MR. SCOTT: We would like them, Judge, and will request them formally.

"THE COURT: My findings are that the plaintiff has not met his burden of proof to prove his case by a preponderance of the evidence, that he has not proven his case by a preponderance of the credible testimony. And the conclusions are that his petition should be dismissed with costs adjudged against him.

"Court will stand adjourned."

The judgment dismissing the appellant's action was thereafter entered.

Briefly, the evidence shows that appellant claims Gee Sing Suey as his father, and that the father claims appellant as his son. The father is now too old to work and, since coming to the United States, appellant has lived with him and supported him. Their relationship with each other has been such that the Chinese-speaking people of Houston in the neighborhood of Ding How Restaurant consider them to be father and son. Jimmie Gee, the manager of the Sun DeLux Cafe in Houston, one of the father's friends since 1930, visited Hong Kong in 1937 and 1938 and while there saw appellant with his mother, Gee Sing Suey's wife. He identified a picture of

appellant which was taken at about that time. The testimony of this long time friend was not impeached in any way.

The father, Gee Sing Suey, testified that he was born in San Francisco and made a number of trips to China. On his first trip in 1912 he met and married Mah Gim Fung. They were properly married in a public ceremonial marriage in accordance with Chinese custom. She thereafter bore him five sons. Three of these were admitted to the United States by the Immigration and Naturalization Service without excessive difficulty. The oldest lives in Amarillo, Texas; the second lives in Washington, D. C.; and the third, at the time of the trial, was in Berkeley, California, attending school. Appellant is the fourth and the youngest is living in Hong Kong. The mother is now dead. On Gee Sing Suey's return from his last trip to Hong Kong in 1940, he was questioned by the Immigration and Naturalization Service as to the identity of his then four children. At that time, ten years before appellant attempted to enter the United States, Gee Sing Suey identified appellant as his fourth son, giving his proper birth date. A Houston police officer and appellant's employer (the only one he has had in the United States) testified as to the intimate relationship of the father and son and of their devotion to one another. The employer first hired appellant as a bus boy in his restaurant but has promoted him to cook. During this time the restaurant books have shown that Gee Sing Suey is listed as appellant's dependent.

In his ex parte hearing before the Immigration and Naturalization Service, appellant told several lies and his admission was denied by that body. We think that some charitable consideration should be given to the circumstances that appellant was then only sixteen years of age and had been held in detention for more than four weeks before he was subjected to extended questioning. The record of that hearing shows that, after appellant had an attorney, he attempted to rectify his untrue statements and admitted that he had lied.

The Government also insists that it has impeached the veracity of the father. Gee Sing Suey signed an affidavit in July 1950 as to the identity of appellant. The affidavit states that appellant was born in Hong Kong on C.R. 23–7–14 [2] (August 11, 1934). The actual stipulated date was C.R. 23–1–14 (February 27, 1934).

This discrepancy between whether appellant was claimed by Gee Sing Suey to have been born in the 1st or the 7th month of C.R. 23 was explained by Gee Sing Suey as follows:

"Q. You made a mistake in this statement? A. The person that made this affidavit out, when he interpreted it, the first month was 'yit' and it was 'tit' first month. That was a mistake in interpreting it. He said it was 'yit' which was 1, and it was 'tit' which was 7."

Prior to this question and answer the court interpreter in the district court had made a very similar mistake:

"Q. When was Gee Chee On born? A. I think it was CR 23, but I know it is 1934 in American calendar year.

"Q. Do you remember whether it was before May 24, 1934, or after May 24, 1934? A. It is eleventh month, fourteenth day, Chinese calendar—I mean first month, fourteenth day, rather.

"The Interpreter: That was my error. They sound almost the same."

The Government insists, however, that Gee Sing Suey should have caught the discrepancy before he signed the affidavit. But this overlooks the fact that he reads very little English and had to have an interpreter in the trial. It seems reasonable to us to believe that a lawyer in preparing an affidavit for Gee Sing Suey would have believed he heard C.R. 23–7–14 when the father actually said C.R. 23–1–14, and that, if the document was read

2. The Chinese do not use the Gregorian Calendar; instead, they use a system based on historical dates. C.R. stands for Chinese Republic.

back and the lawyer read C.R. 23–7–14, the father might reasonably have thought the correct date was read. Furthermore, he had given the correct date on his return from his last trip to Hong Kong, and we see little or nothing in this discrepancy to indicate a lack of veracity.

We agree with appellant that, even eliminating his own testimony, there is still sufficient unimpeached, credible evidence in the record to establish a prima facie case showing Gee Sing Suey to be Gee Chee On's father. We think the statement of the trial judge quoted in the first part of this opinion shows that he was so shocked at the many discrepancies in appellant's first statements to the immigration authorities before he had legal advice, that he determined the case against appellant largely on that ground. The trial judge said:

" * * * Serious doubts have been raised about the credibility of the plaintiff's testimony. We cannot give the highest credibility to the testimony of one who will swear to what he believed to be the best story at the time."

No other witness was indicated as being reasonably unbelievable.

The Government devotes much space in its brief toward convincing us that a trial judge does not have to believe any witness. That is true only if there is reasonable cause not to believe him, for a court may not arbitrarily reject the testimony of a witness whose testimony appears credible.[3]

There does not appear to be a serious challenge as to the legitimacy of marriage between Gee Sing Suey and appellant's mother.[4] In order to be legitimate a marriage need not conform to American customs. If it is legal in China, it will be accorded legality here. There was no evidence indicating any irregularity in the marriage, and the

marriage having been proved, there was a strong presumption of its validity. See Lim Kwock Soon and Lim Kwock Min v. Brownell, 5 Cir., 253 F.2d 809.

As in that case, so in this, our review of the evidence leaves us with the definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. We see no need of remanding the case for further proceedings. The Government had access, no doubt, to voluminous testimony before the immigration authorities in connection with the admission of appellant and of his older brothers, but offered no evidence upon the trial. The judgment is therefore reversed and the cause remanded with directions that judgment be rendered declaring that Gee Chee On is a national and citizen of the United States. See 28 U.S.C.A. § 2106.

Reversed and remanded with directions.

---

3. United States v. Johnson, 5 Cir., 1953, 208 F.2d 729, 730; Arnall Mills v. Smallwood, 5 Cir., 1933, 68 F.2d 57, 59: Ariasi v. Orient Ins. Co., 9 Cir., 1931, 50 F.2d 548, 551.

4. We assume without deciding that the question of legitimacy, although not expressly raised by the pleadings, was properly before the trial court.